UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CHRISTOPHER R. HUBBLE,<br><br>               Plaintiff,<br>    v.<br><br>DANA MARKS, *et al.*,<br><br>               Defendants. | Case No. 3:22-cv-00277-MMD-CSD<br><br>ORDER |

**I.    SUMMARY**

Plaintiff Christopher Hubble, who is incarcerated at Lovelock Correctional Center ("LCC"), brings this action against LCC officials and medical personnel[1] under 42 U.S.C. § 1983. (ECF No. 1-1 ("Complaint").) Defendants filed a motion for summary judgment. (ECF No. 91 ("Motion")[2].) Before the Court is United States Magistrate Judge Craig S. Denney's Report and Recommendation ("R&R"), recommending that the Court deny the Motion as to Defendant Dana Marks, grant the Motion as to several other defendants, and dismiss Doe defendants without prejudice. (ECF No. 101.) Defendants timely objected to the R&R (ECF No. 102 ("Objection")), and Hubble responded (ECF No. 103 ("Response")). For the reasons explained below, the Court overrules the Objection and adopts the R&R in full.

///

///

///

---

[1]Defendants are Dr. Dana Marks, Nurse Poag, Nurse Erin Parks, Nurse Cameron Mell, Dr. Michael Minev, Dr. Martin Naughton, and Warden Tim Garrett. (ECF Nos. 31 (order screening first amended complaint), 78-79 (voluntarily dismissing Defendants Rusty Donnelly, Nurse Brian, and Nurse Clare).)

[2]Plaintiff responded to the Motion (ECF Nos. 96, 97-1, 97-2) and Defendants replied (ECF No. 99).

## II. BACKGROUND[3]

On July 13, 2020, Hubble requested a doctor's appointment at LCC so that he could be seen regarding "a large painful lump on the back of [his] neck." (ECF No. 92-1 at 4.) He was seen ten days later. (*Id.*) On July 30, 2020, Hubble sent another medical kite complaining of "a great deal of pain" in his neck and numbness in his pinky and ring finger. (*Id.* at 3.) He noted that the "pain ha[d] increased and constantly gotten worse." (*Id.*) A doctor saw him on August 7, 2020, and recommended ice to Hubble's left elbow at night. (*Id.* at 2-3.) Hubble was then given an ice pack. (*Id.*; ECF No. 96 at 2.)

Hubble filed an Informal Grievance on August 10, 2020, requesting a Lyrica prescription for his neck pain that had affected "all aspects" of his life, including sleep, for over a month. (ECF No. 97-1 at 8.) His grievance was denied in November 2020 because he had seen Marks on August 6 and September 9, 2020. (*Id.*) Marks was Plaintiff's primary treating physician throughout the relevant time period.

On September 9, 2020, Marks noted that Hubble's then-current drug regimen was giving him no relief from his sciatica, which was interfering with his sleep. (ECF No. 92-1 at 6.) Marks requested Lyrica for Hubble. (*Id.*) Marks also requested x-rays of Hubble's knees and cervical spine and a bottom bunk on the lower tier for Hubble to sleep in. (*Id.* at 7.) The next day, Hubble sent a kite requesting confirmation of these orders. (*Id.* at 8.) The responder confirmed. (*Id.*)

On October 5, 2020, Hubble sent another kite requesting a modification to his Lyrica prescription because he still struggled with neck, shoulder, and arm pain and sciatica during the night. (*Id.* at 10.) He wanted to take extended-release Lyrica twice a day or regular Lyrica three times a day. (*Id.*) Marks denied this request ten days later due to Hubble "taking too many sedating medications." (*Id.*) On November 25, 2020, Hubble requested an appointment with Marks for "severe nerve issues" in his back and legs that left him "barely" able to walk. (*Id.* at 12.) Hubble requested treatment that could be ordered

---

[3]The following facts are undisputed unless otherwise noted.

without a doctor present, such as heating pads, for his neck and back pain. (*Id.*) Hubble again requested an appointment after another three weeks had passed. (*Id.* at 13.) There is a notation that Hubble saw Marks regarding these issues. (*Id.* (stating repeatedly that the appointment with Marks was on January 19, 2022); ECF No. 91 at 2 (stating the appointment was a year earlier on January 19, 2021).)

Hubble sent another kite on May 20, 2021, referencing a discussion with Marks regarding the "lack of options for the replacement of Lyrica." (*Id.* at 17.) Hubble noted that, after some independent research, he found two non-narcotic, non-habit-forming mediations (Baclofen and Tramadol) that might reduce his "massive amount of pain" and requested that Marks prescribe him these medications. (*Id.*) The responder wrote that Hubble would be scheduled. (*Id.*) On June 18, 2021, Hubble sent a follow-up kite, as stopping Lyrica due to its "unbearable side effects" left him to deal with pain "beyond what [he could] handle." (*Id.* at 18.) Hubble indicated his belief that "Dr. Marks already ha[d] a full understanding of [his] need to control the pain," and requested a prescription for Tramadol. (*Id.*)

Hubble filed another Informal Grievance on July 26, 2021, claiming that Marks had "refuse[d] all treatment" and "ignored all forms of verbal and written notification of the ongoing an[d] dire situation." (ECF No. 97-1 at 7.) The grievance noted that Hubble suffered from the following "life-long disabilities": loose hardware, osteoarthritis, and unresolved bone and hardware issues. (*Id.*) He requested daily ice packs, heating pads, x-pillows, shoes, and Tramadol. (*Id.*) Hubble raised this grievance to Level 1 and Level 2 but never received a response. (*Id.*)

On August 25, 2021, Hubble sent a kite asking what he had to do "to get what [he] medically require[d]," as he had needs "beyond 'free' Tylenol," sent in "several kites" requesting resolutions that did not require a doctor, and the doctor did not need to examine him to prescribe new medications. (ECF No. 92-1 at 20.) The next day the kite was forwarded to the director of nursing services for review. (*Id.*; ECF No. 91 at 3.) On September 3, 2021, Hubble requested care for muscle cramps that were a side effect of

one of his medications. (ECF No. 92-1 at 21.) The kite was marked "received" but had no response. (*Id.*) Less than a week later, Hubble sent another kite asking whether the x-ray machine had been repaired, since he had been waiting for more than a year to receive the x-rays that were ordered for him. (*Id.* at 22.) The kite was referred to Marks, and the response indicated that LCC was still unable to do spine x-rays. (*Id.*)

On October 21, 2021, Hubbe sent a kite thanking D.O.N. Ms. Parks for "resolving [his] medical needs" and the resultant "massive improvement to [his] quality of life." (*Id.* at 23.) However, he still inquired as to the progress with his medical lay-in orders, discussed medications, and "much needed" ice packs. (*Id.*) The responded indicated that Hubble had been "seen by MD." (*Id.*)

On November 1, 2021, Hubble requested to see Dr. Caroll because he was being denied or not considered for other medications because of his mental health medications. (*Id.* at 24.) Hubble was scheduled for an appointment. (*Id.*)

On December 15, 2021, Hubble sent a kite stating that he could not mentally handle the pain and suffering caused by his surgical hardware, spina bifida, and osteoarthritis. (*Id.* at 25.) Hubble claimed that he had been medically neglected for years. (*Id.*) A November 2007 radiology report from LCC stated that a pelvic x-ray indicated that Hubble had spina bifida occulta at S1. (*Id.* at 34; ECF No. 97-1 at 2.) Caroll saw Hubble on February 1, 2022. (ECF Nos. 91 at 3; 92-1 at 26.) Hubble told Carroll that Marks wanted her to recommend nerve pain medication, specifically either Haldol or SNRI. (ECF No. 92-1 at 26.) Carroll noted that Haldol would be inappropriate, but Cymbalta would be okay. (*Id.*) The chart also noted that Hubble was sleeping three to four hours each night. (*Id.*) That same day, Hubble sent a kite to Marks stating that Carroll recommended that he take Cymbalta but that she does not treat things like nerve pain. (*Id.* at 28.) Hubble requested to try Cymbalta in combination with Tramadol muscle relaxer. (*Id.*) The response indicated that Hubble would be receiving Cymbalta and asked Hubble to send a kite if his pain lessened after six weeks. (*Id.*)

///

On February 4, 2022, Hubble sent a kite complaining of unbearable "progressively worsening spinal pain" that left him unable to perform daily functions, sleep, or work without pain medication. (ECF No. 97-1 at 25.) He requested to restart his psychiatric medication. (*Id.*) On February 20, 2022, Marks ordered wider shoes with support to relieve Hubble's chronic back, knee, and ankle pain. (ECF No. 92-1 at 29.)

On February 27, 2022, Hubble kited Marks to ask if he could continue receiving Cymbalta beyond the ten-day prescription he received because it reduced his pain to "levels that are more bearable." (*Id.* at 30.) Hubble was concerned that, without the combination of medications he was receiving, the pain would "again be unbearable." (*Id.*) The kite was marked "received" but had no response. (*Id.*)

On March 11, 2022, Hubble kited Marks again to ask why Marks had stopped giving him Cymbalta after seven days even though it "magically resolved" the pain he had been experiencing for years. (*Id.* at 31.) Hubble also requested ice packs for his surgical hardware suffering. (*Id.*) A response dated March 30th stated that Hubble was seen by an orthopedic specialist on March 28, 2022. (*Id.*) Dr. Leon Jackson ran cervical spine imaging of Hubble on March 28, 2022, and found that he had 'negative cervical spine,' as his alignment was "within normal limits with no fracture or subluxation" and the imaging did not show significant degenerative changes. (ECF No. 97-1 at 3.)

On April 1, 2022, Hubble sent a kite to Marks asking for something to reduce his pain enough to "get some sleep." (ECF No. 92-1 at 27.) Ibuprofen and Tylenol were not providing "any kind of relief," even at the highest level recommended. (*Id.*) The kite was marked "received" but had no response. (*Id.*) On April 19, 2022, Hubble saw a medical provider and signed a release of liability for refusal to provide him Cymbalta after he had an adverse reaction to it. (*Id.* at 32-33.) An MRI of Hubble's cervical spine was taken on July 22, 2022. (ECF No. 97-1 at 4.) The MRI showed that Hubble's C5-C7 vertebrae had "[m]ild posterior disc bulging . . . without significant spinal stenosis" and "mild foraminal narrowing." (*Id.*)

///

## III. DISCUSSION

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's R&R, the Court is required to "make a *de novo* determination of those portions of the R&R to which objection is made." *Id.* The Court will engage in *de novo* review of the sections of the R&R related to Defendant Marks—in particular, Judge Denney's recommendations on Marks' deliberate indifference and qualified immunity defense—because Defendants only objected to these findings. (ECF No. 102.) All other recommendations in the R&R will be reviewed for clear error. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1116 (9th Cir. 2003).

### A. Marks' Deliberate Indifference

Defendants first object to Judge Denney's finding that there remains a genuine dispute of material fact as to whether Marks was deliberately indifferent to Hubble's serious medical needs. (ECF No. 102 at 3.) *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) (setting out the summary judgment standard). *See also Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (holding that a prison official violates the Eighth Amendment when they act with "deliberate indifference" to the serious medical needs of a prisoner); *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) ("To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference.").

In the R&R, Judge Denney first concludes that Hubble sufficiently demonstrates the existence of a serious medical need. (ECF No. 101 at 12.) *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) ("[T]he plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.") (internal quotations omitted). Judge Denney points to a "plethora of kites and grievances as well as . . . progress notes in [Hubble's] medical records where Plaintiff continued to complain that he was

experiencing chronic pain." (ECF Nos. 101 at 12, 97-1.) The Court agrees that the factual record includes ample medical evidence of long-term chronic and substantial pain constituting a serious medical need. (ECF No. 97-1 at 25 (February 2022 kite stating that Hubble had unbearable, progressively worsening spinal pain impacting his ability to function).) *See also McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds*, *WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (noting that courts evaluate "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need").

Judge Denney next concludes that factual disputes exist as to whether Marks' conduct amounted to deliberate indifference. (ECF No. 101 at 13-14.) The Court agrees that taking the evidence together, "a fact finder could determine that Dr. Marks knew Plaintiff suffered from chronic pain, but he did not act reasonably to adequately address this pain." (*Id.* at 14.) *See Farmer*, 511 U.S. at 837 (requiring as a minimum that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). In particular, the record shows that Plaintiff submitted request after request for medical review because, among other things, his pain was uncontrolled at night; many of his complaints received no response. (ECF No. 101 at 13-14.) When side effects required Hubble to stop taking the medication Lyrica, he was not offered an alternative for months. (*Id.*) And when another medication was later found to be effective, Hubble's requests to continue that treatment were ignored or denied with no explanation. (*Id.*) The record also supports that Hubble needed a spinal x-ray, that no action was taken to procure x-rays in light of a broken machine, and that Hubble was not referred to an orthopedic specialist for several years. (*Id.*)

In their Objection, Defendants argue that Hubble has not alleged that Marks was personally responsible for scheduling appointments or responding to medical kites which were not addressed to him. (ECF No. 102 at 3.) They also argue that Plaintiff improperly

"infer[s] that Dr. Marks failed to act after being informed there had been no imaging, but it remains that Hubble was referred to an outside consultant, an orthopedic specialist, with an appointment scheduled and a visit accomplished within six months during a time when COVID-19 was still restricting non-emergent medical care." (*Id*.) Finally, Defendants argue that Hubble had difficulty deciding whether he wanted to undergo surgery, that Marks has never refused to treat Hubble, and that "[e]ach time Hubble saw Dr. Marks, additional options were considered." (*Id*.) It is true that a medical professional's negligence or delay does not, taken alone, evince a deliberate indifference claim. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jett*, 439 F.3d at 1096. Nevertheless, the Court looks at the evidence in the record cumulatively and construes the facts therein in the light most favorable to Plaintiff as the non-moving party. A fact finder could reasonably conclude that Marks was aware of Hubble's continuing severe pain and medication concerns over the course of multiple years—regardless of his personal role in scheduling appointments—and that his decisions constituted a "purposeful act or failure to respond" to Hubble's pain leading to further harm. *See Jett*, 439 F.3d at 1096; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) ("[The] mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference.").

While some evidence may indeed weigh in Defendants favor—for example, evidence of contraindications between relevant medications—Defendants do not meet their burden to demonstrate the absence of a dispute at the summary judgment stage, because the facts could still suggest more than "a difference of opinion between an inmate and medical staff as to the appropriate medical treatment." (ECF No. 91 at 7.) *See Celotex Corp.*, 477 U.S. at 323-24.

Accordingly, the Court overrules the Objection with respect to Judge Denney's findings on Marks' deliberate indifference under the Eighth Amendment.

### B.  Qualified Immunity

Defendants also object to Judge Denney's finding that Marks is not entitled to qualified immunity. (ECF No. 102 at 3-4.) When considering whether a claim may proceed

against prison officials without the protection of qualified immunity, the Court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 240-42 (2009) (providing that a district court may address these elements in any order). The Ninth Circuit has emphasized that it is insufficient for a district court to end its qualified immunity analysis after determining that a plaintiff has proven a constitutional injury, or that there are material facts in dispute as to whether a constitutional violation occurred; the court must continue to the second step of the inquiry and ask whether the right was clearly established at the time of the violation. *See, e.g.*, *Carley v. Aranas*, 103 F.4th 653, 660-61 (9th Cir. 2024).

As to the first prong of the analysis, the Court has already agreed with Judge Denney's determination that, viewing the facts in the light most favorable to Plaintiff, a reasonable jury could determine that Marks violated Hubble's Eighth Amendment rights. (ECF No. 101 at 17-18.) *See Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014) (noting that a court must view all evidence and related inferences in the light most favorable to the nonmoving party).

Defendants primarily object that under the second prong of the analysis, there is no "clearly established right" at issue in this action, given that any such right must be defined narrowly. (ECF No. 102 at 3-4.) The Court is unpersuaded by this argument. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In the Objection, Defendants point to the Ninth Circuit's recent ruling in *Carley v. Aranas*, 103 F.4th, decided after their original Motion was filed in this action, where the circuit court found that the fact that an "official knows of and disregards an excessive risk to inmate health" is not enough to indicate a clearly established constitutional right. *Id.* at 660-61. Instead, "the relevant right must have been defined more narrowly" than the general rule from *Farmer*. *Id.* at 661 (quoting *Hampton v. California*, 83 F.4th 754, 769

(9th Cir. 2023)). But here, Plaintiff has done more than merely point to the right against substantial risk of harm at a high level of generality. Hubble's claims rest on Marks' continued and purposeful lack of response to Hubble's chronic pain, despite evidence of the severity of that pain. (ECF No. 96 at 7 (responding to Defendants' Motion and emphasizing that "[t]he entire medical records of over 1000 pages and the numerous but consistent medical Kites show without doubt a pattern, a conscious disregard for the health condition of the plaintiff" reflecting the "conscious disregard of his chief complaint—chronic pains").) Hubble asserts that "[Dr. Marks h]aving chosen to disbelieve him, there became a wholesale disregard of every other issue no matter how serious the risk and how significant the consequence." (*Id.*) The Court finds these factual circumstances sufficiently support that a reasonable defendant would be on notice that their actions violate the constitution. See *Stewart v. Aranas*, 32 F.4th 1192, 1194 (9th Cir. 2022) (finding that a clearly established right existed when prison doctors failed to treat a plaintiff's deteriorating prostate over the course of multiple years and holding that "mere disagreement with a medical treatment plan is not deliberate indifference [ . . . b]ut continuation of the same treatment in the face of obvious failure is").[4]

Accordingly, the Court overrules the Objection to the R&R as to Marks' qualified immunity defense. The Court will allow Hubble's claim against Marks to proceed.

### C.    Remaining Findings

As to the remaining portions of the R&R to which Defendants did not object, the Court finds that Judge Denney did not clearly err and adopts the recommendations, granting summary judgment in favor of all other defendants and dismissing Doe

---

[4]By contrast, *Carley* involved the question of whether prison medical personnel were on notice that an official prison medical directive, with which they complied, violated the constitution. See 103 F.4th at 660-61 (addressing claims that prison doctors were deliberately indifferent when acting in line with prison Hepatitis C treatment protocols and concluding that "the appropriately narrow inquiry asks whether a prison medical director between August 2013 and May 2018 would have been on notice that the NDOC [hepatitis treatment] policy was unconstitutional at the time"). While Defendants in this action argue summarily that they complied with medical directives (ECF Nos. 91 at 8, 91-1, 91-2, 91-3) the Court finds that material facts remain disputed as to whether and to what extent Marks complied with such directives.

defendants without prejudice. *See Reyna-Tapia*, 328 F.3d at 1116.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Defendants' Objection (ECF No. 102) to Judge Denney's Report and Recommendation (ECF No. 101) is overruled.

It is further ordered that Judge Denney's Report and Recommendation (ECF No. 101) is accepted and adopted in full.

It is further ordered that Defendants' Motion for Summary Judgment (ECF No. 91) is granted in part and denied in part. The Motion is granted as to Defendants Poag, Parks, Mell, Dr. Minev, Dr. Naughton, and Garrett. The Motion is denied as to Defendant Marks.

It is further ordered that Defendants Doe Utilization Review Members are dismissed from this action without prejudice.

The Court refers this case to Magistrate Judge Denney to conduct a settlement conference. The proposed joint pretrial order is due 30 days from the settlement conference.

DATED THIS 19th Day of December 2024.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE